## No. 12,310.

JOHN A. DUFFY ET AL. VS. THE CITY OF NEW ORLEANS ET AL.

*The Board of Commissioners is not a Corporation.*—Legislation resulting in the appointment of a board of commissioners with functions defined does not necessarily create a corporation, though vested with some of the essentials to the life of a corporation.

*Appointment of the Members of the Board.*—The members of a board of commissioners may be appointed by the executive in matter of property used by the general public, within the limits of a municipal corporation.

*The Act is General in its Effect.*—An act is general, within the meaning of the Constitution, when it relates to a general interest.

*Not Without·Due Process of Law*—Without resorting to the courts, the State may resume some control over property of which the general public has the use, without the necessity of, in the first place, resorting to the courts.

*Authority Permissive and not Mandatory.*—Without contravening any of the articles of the Constitution, a municipal corporation may be authorized to furnish the funds to pay the value of the property expropriated.

*Actual Issues.*—It is the function of courts to deal with actual issues. Those which may arise will not be anticipated.

The grounds urged are not of such a character as to permit the enforcement of the law in its entirety.

APPEAL from the Civil District Court for the Parish of Orleans. *King J.*

*Rouse & Grant* for Plaintiffs, Appellants.

*Samuel L. Gilmore,* City Attorney, for City of New Orleans, Defendant and Appellee.

*Bernard McCloskey* for Board of Commissioners of the Port of New Orleans, Defendant, Appellee.

Argued and submitted December 1, 1896.
Opinion handed down December 14, 1896.
Rehearing refused January 18, 1897.

The opinion of the court was delivered by

BREAUX, J. From the refusal of the court *a qua* to grant the injunction applied for in this case, plaintiffs, residents of the city, owners of property therein, and taxpayers, prosecute this appeal.

The plaintiffs assert that Act 70 of 1896 is unconstitutional and void.

Whether the Legislature can pass a valid act to establish a commission for the port of New Orleans, define their powers and duties, provide a revenue therefor, is the question before us.

The first ground of nullity urged is that the act creates a corporation, and is in consequence obnoxious to Art. 46, prohibiting the General Assembly from passing any local or special law creating corporations.

Some question also has been made regarding the power of the Governor to appoint the members of the board.

It is in point to state that it is declared in the preamble of the act that public notice has been given as required by Art. 48 of the Constitution. It also contains the declaration, which we paraphrase as follows for the sake of brevity: The port of New Orleans has been gradually extended beyond the corporate limits; the divided authority of three parishes and consequent fees, injuriously affect the traffic of the port and threaten to divert the trade to other ports; the supervision and control of a board will consolidate the service of harbor-master and wardens, wharf superintendents, wharfingers of three parishes under one body at a reduced expense.

The controlling motive is, it is further stated, to operate and improve the wharves, develop and expand the commerce of the port on the lines above indicated.

*Act 70 of 1896, under which a Board of Commissioners was appointed, does not create a corporation.*

We think that the Legislature may, without contravening the article of the Constitution ordaining that the General Assembly shall not pass any local or special law creating corporations, provide for the appointment of a Board of Commissioners, with powers and duties set forth and defined in the act under consideration. The "Board of Commissioners" authorized by the act of 1896 is not a body corporate within the meaning of the Constitution. It is obvious that the Legislature did not intend to create a corporation. Generally, a corporation has succession in its corporate name; it may plead and be impleaded; it may hold and convey property.

The board here is not invested with all these qualities, essentials to the existence of a corporation.

The act empowers this board to administer the public wharves of the port and invests it with certain duties. The matter is, we think, one chiefly of administration. The Legislature had the power to pass an act to administer the affairs of the public wharves and levees through agents.

Having this power it had the power to carry the legislative will into execution through the intervention of a Board of Commissioners appointed for the purpose, without necessarily creating a corporation within the inhibitory clause of the Constitution. Though the board may possess some of the incidents of a corporation, it is not necessarily a corporation.

The provisions of the act can only be regarded as regulations and agencies to be enforced by this board. It is given such authority as may be needful to that end. The members are agents acting together.

This board is not a body corporate with privileges and immunities such as public corporations must have. The most that can be alleged is that the act authorizes the board to perform certain designated acts, which we must assume are in the interest and for the welfare of the State. The general modes of creating corporations are not before us for consideration. We are only concerned with an act of public agency passed for a special purpose. As such we do not think that it should be adjudged a public corporation.

Conceding that the constitutionality of the act is not as clear as it might have been made to appear, the authorities hold that every possible presumption and intendment will be made in favor of the constitutionality of an act, and that the courts will only interfere in cases of clear and unquestioned violation of the fundamental law. It has been repeatedly said that the presumption is that every State statute, the object and provision of which are among the acknowledgedpowers of legislation, is valid and constitutional; and such presumption is not to be overcome unless the contrary is clearly demonstrated.

Sedgwick on the Construction of Statutory and Constitutional Law, p. 409.

INTERPRETATION ALMOST CONTEMPORANEOUS WITH THE CON-
STITUTION.

It is agreed by all the books that to contemporaneous interpreta-
tion due weight should be given in cases of ambiguity and uncer-
tainty. A number of acts have been passed creating similar boards
in this State, under which commissioners have been appointed by
the executive. In matters of public health, in administering the
affairs of canals and other interests in which the State is con-
cerned, boards are appointed with the silent acquiescence of the
people, including the legal profession and the judiciary.

Great deference, said the Supreme Court of New York, is certainly
due to legislative exposition of a constitutional provision, especially
when it is made almost contemporaneous with such provision, and
might be supposed to result from the same policy and mode of rea-
soning which prevailed among the framers of the instrument pro-
pounded in convention assembled. People vs. Green, 2 Wend. 266,
274.

The maxim itself is, *Contemporanea exposito est fortissime in lege.*

APPOINTMENT OF THE BOARD OF COMMISSIONERS.

The second point, relating to the appointment of the officers who
should he charged with the administration of the wharves and
revenues, is more particularly taken by the city of New Orleans.

The city avers that the matters involved are local and municipal,
and that under Art. 253 of the Constitution the officers charged with
such duties must hold their offices from the people in the city.

It is not alleged that the city, through any of its officers, can
enforce the act. This is impossible under the law. It must be
enforced, in so far as relates to the selection of the members of
the board in accordance with its provisions, or it can not be enforced
at all.

Article 253 is in these words:

"The citizens of the city of New Orleans, or any political corpora-
tion which may be created within its limits, shall have the right of
appointing the several public officers necessary for the *administra-
tion of the police* of said city, pursuant to the mode of election which
shall be provided by the General Assembiy." (Italics ours.)

The organic law, in terms, secures "the right (to the city)

of appointing the several public officers necessary to the adminis-
tration of the police," while the Board of Commissioners have the
power of " providing for lighting and policing the wharves and
sheds." They are not necessarily conflicting duties. One power is
not necessarily opposed to the other. One may provide funds and
the other may have charge of the police of the wharves.

The act in question, as relates to the appointment of the members
of the Board of Commissioners, is not unconstitutional.

The story of the wharves is gracefully narrated in the brief.
Counsel, in support of their cause, quote from well considered
decisions of our predecessors. First Municipality vs. Pease, 2 An.
542; Louisiana State Bank vs. Orleans Navigation Company, 3 An.
295; Stewart vs. City of New Orleans, 9 An. 461.

It is also supported by reference to the utterances of prominent
legislators in the past history of the State, whose learning and
ability were conspicuous in directing the course of legislation and
safeguarding public interest. The gist of the narration is that since
the days of Governor O'Reilly, under Spanish dominion, ordinances
have been enacted by the city relative to fees for wharfage, and
that the city always had complete and absolute charge of the police.

It is possible that the historic argument loses its immediate
point, in view of the fact that private rights, in so far as appears in
this case, are not to be interfered with, and that the police is to
remain under the direction of the city authorities.

We refer to one of the cited authorities in counsel's brief, and one
upon which, we infer, they confidently rely. In the case cited, that
is in Edgerton vs. New Orleans, 1 An. 437, Mr. Justice Rost, speak-
ing for the court, said in substance: That the city had special sov-
ereign power; it had the right to appoint the several police officers
necessary for the administration of the police. A right which we
also hold can not be questioned.

This right, the court in the last cited case justly said, is secured
and rendered permanent by Art. 128 of the Constitution.

And further the court says: " The counsel derides the idea that
the city is invested with sovereign powers. Names can not alter
things. Under our policy no department of the government exer-
cises the power of sovereignty in its own right. *The constitutional
powers of the State are all trust. The powers of the Legislature, of the
court and of the city of New Orleans differ in degree and object, but*

*they all derive their binding force from the supreme law of the State."*
(Italics are ours.)

Article 253 of the Constitution of 1879 is substantially a reproduc-
tion of articles upon the subject of preceding constitutions, save
that the wording in the latter in regard to the police of the city is
slightly different.    We reaffirm the decision.
constitutional limitations alone are the measure of legislative power.

The legislative powers legitimately to be implied from the terms
of the decision just cited are broad enough to sustain our views.

THE BANKS OF RIVERS ARE FOR THE USE OF THE GENERAL PUBLIC.

The powers of a municipal corporation are divided into public and
private.    In all that relates to purely municipal purposes, appoint-
ments or election can only be made by municipal authority.

"The powers and capacities," said Judge Cooley, as organ of
the court, "which are acquired under them, are usually spoken of
as private, in contradistinction to those in which the State is con-
cerned, and which are called public."    People vs. Detroit, 28
Mich. 228.

Landings within the limits of corporations are not without legisla-
tion, within the power of the municipal government.    The State is
concerned; while it may delegate its authority, on the other hand it
may exercise it through its chosen agents.    The State may appoint
agents to take charge of any of the public property not by the Con-
stitution confided to any other authority.    Maximillien vs. Mayor,
62 N. Y. 160; Connors vs. Mayor, 2 Hun. 440; Kuhn vs. Latro, 46
Pacific, 87-94; Easterly vs. Incorporated Town of Irwin, Northwest-
ern Reporter, 919-921.

We now reach the next point: That the act is obnoxious to Art.
46 because it provides for the maintenance of the wharves and
landings and approaches thereto, which are, counsel urge, public
highways.    The constitutional prohibition applies to "roads,"
"highways," "streets," or "alleys," and does not embrace land-
ings and levees.    They are *loci publici*, and are, at times, referred
to as public places on which there may be "highways."    The words
of a law are to be understood in the common and usual signification.
"Highway," as generally understood, and in the sense in which it
is employed in the Constitution, between the related words of
"street" and "road," does not include rivers or its bank.    The
rule *noscitur a sociis* is not without application.

### THE STATUTE IS NOT LOCAL NOR SPECIAL.

We are not impressed by the argument that the act is a local or special law. We would find difficulty in acceding to the proposition that the act is local and special. There are no issues involved of small or local consideration. The fertile valley is interested; the traffic and commerce on seas and ocean are concerned.

The act under which the Criminal District Court of this city was given life and authority was assailed as being a local law, contrary to the article of the Constitution here invoked. This court decided that it was not a "local law," but general in its effect, citing a number of authorities in support of the opinion (State vs. Dolan, 35 An. 1141, 1144).

That act was much less general in its effect than the law we now have under consideration. The law being general in its effect, it is general (30 Howard B. C. New York, 289).

### A QUESTION OF ADMINISTRATION ONLY.

We pass to the alleged repugnance of the act to Art. 56 of the Constitution.

It is urged upon our attention by counsel that the intent of this article is to prevent the possibility of wrongfully divesting municipal corporations of their private property.

The matter we are called to decide is purely administrative. There is nothing granted to the Board of Commissioners save the right to administer, in accordance with the terms of the act, property of which the State has the power to resume control.

The fact that this board may attempt to exceed its powers is no reason, in the present proceeding, for declaring the act void.

### DUE PROCESS OF LAW.

This brings us to the consideration of the alleged attempt to deprive the city of her property, without due process of law, and without compensation.

The grantor of the franchise is a public body; the grantee also. It is settled by numerous decisions that in such a case the grant is not beyond the reach of the legislative power. The State can, on suitable occasions, acquire the power with which it has parted without the necessity of resorting to the courts. It is certain that the city

can expect no compensation in the literal meaning of that word for public property. It is with that class of property we are now dealing. If the city has private interests involved, they must be protected.

Under an allegation of private interests, however, we do not think it possible to prevent the enforcement of a law, under which the control of public property is resumed.

### THE PURCHASE OR EXPROPRIATION OF A FRANCHISE.

Lastly, it is urged, that the proposed purchase or expropriation of the lease of the Louisiana Construction Company, at the expense of the city, is another illegal feature of the act.

By the terms of the act, the State has made it the duty of the Board of Commissioners as its agent, to acquire the lease of the wharves, by purchase or by expropriation; *i. e.*, the lease now held by the Louisiana Construction and Improvement Company, and it is also made the duty of the Common Council to provide for the payment of the price of the purchase or expropriation; provided, that this price to be paid shall be satisfactory to the council.

First—As to the authority of the Board of Commissioners, it is not evident that the Legislature has exceeded its authority. Leases generally are as subservient as any other contract to the power of eminent domain, upon condition of adequate compensation. In reference to a franchise, it has been decided that it is " of no higher order and confers no more sacred title than a grant of land to an individual, and where the public necessities require it, the one as well as the other may be taken for public purposes on making suitable compensation." Abbott's National Digest, Vol. 2. A lease of a franchise must be held subject to the same principle, or else the power of eminent domain might be easily frustrated. We do not intend to intimate that there was any such purpose in this case in leasing the franchise. We only hold, that leases generally are held subject to the power provided for by the article of the Constitution, reading:

" No *ex post facto* law, nor any law impairing the obligations of contract, shall be passed, nor vested rights be divested, unless for purposes of public utility and for adequate compensation."

Second—As to compelling the city to pay the price as contended by plaintiff, is the purpose. Such is not our interpretation of the

act. The power, as we believe, was intended to be directory. The City Council is not commanded, *nolens volens*, to provide the funds and pay the price. The proviso which reads " that the price to be paid shall be satisfactory to the said council " invests the whole section with a permissive character in so far as the City Council is concerned.

*In re* Brooklyn, published in " Lawyer's Reports of Annotated Cases," Book 26, pp. 270, 278.

As to the lease under which the wharves are now held and managed by the Louisiana Construction and Improvement Company, we express no direct opinion; there may be special defences taking it out of the grasp of general principles. It will be time enough to pass on particular questions if the matter should be brought before us, in course of time contradictorily with those directly concerned.

The issues actually before us would not justify an injunction.

The judgment is affirmed.