(36 South. 837.)

No. 15,043.

BOARD OF COM'RS FOR PORT OF NEW ORLEANS v. NEW ORLEANS & S. F. R. CO. et al.*

(May 23, 1904.)

NAVIGABLE RIVERS—CONTROL OF BANKS—USE BY RAILROAD.

1. The state, being charged with the administration of the banks of the Mississippi river

*Rehearing denied June 20, 1904.

within the limits of the city of New Orleans, and of the public wharves and landings thereon, must necessarily discharge its functions by means of an agent, and until 1896 acted through the city of New Orleans. It then appointed as its agent for the purpose of such administration the board of commissioners of the port of New Orleans, and, in so doing, withdrew from the city all authority that had been granted to it in that behalf, "save," as this court has decided, "in connection with private wharves," and, in language at once more specific and more comprehensive, conferred that authority on the agent so appointed. The city has, therefore, no present jurisdiction over the wharves and landings mentioned, as such, and hence has no power, without the consent of said board of commissioners, to authorize the construction and maintenance of a railroad thereon.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by the board of commissioners for the port of New Orleans against the New Orleans & San Francisco Railroad Company and the city of New Orleans. Judgment for defendants, and plaintiff appeals. Reversed.

Bernard McCloskey, for appellant. Farrar, Jonas & Kruttschnitt, for appellee New Orleans & San Francisco Railroad Company. Henry Laurence Lazarus, for appellee city of New Orleans.

## Statement of the Case.

MONROE, J. Plaintiff alleges, in substance, that it has been vested by the state with the control, and charged with the administration, of the harbor, port, wharves, and landings of the port of New Orleans, and that, by virtue of the authority so conferred for the performance of the duties so imposed, it has exclusive jurisdiction to determine whether a public belt railway shall be constructed and operated upon the landings in question, and, if so, upon what terms and conditions; that the city of New Orleans, fully recognizing such jurisdiction, forwarded to it, for its approval, a projet of an ordinance providing for the construction and maintenance of a railway, the projected line of which impinged upon said landings, and

that plaintiff approved the same upon certain conditions; that the city thereafter adopted an ordinance which was not submitted to or approved by plaintiff, which ignores its authority, and the purpose and effect of which are, and will be, to devest plaintiff's control and possession of a portion of said landings, and transfer the same to the city's grantee, the New Orleans & San Francisco Railroad Company. Wherefore plaintiff prays for an injunction and for judgment, etc. The defendants allege that the adoption of the ordinance which is made the subject of attack was a valid exercise of the power of the city; that the wharves and landings are public property, over which plaintiff has nothing but administrative powers; and that consequently neither the city nor the railroad company is under any obligation to ask the consent of the plaintiff to lay and operate a railroad over, along, and across said public property. The railroad company further alleges that the city has undertaken to provide a right of way for the proposed road, and must obtain the consent of the plaintiff, if such consent be necessary.

It is beyond dispute that the city of New Orleans, by Ordinance 1615, N. C. S., has authorized the construction and maintenance of a belt railroad upon a line which at certain points passes over and through spaces adjacent to the public wharves, which are used and needed as public landings of the port of New Orleans.

The acts of Congress under which Louisiana was admitted into the Union declare that the Mississippi river is a public highway, "and forever free as well to the inhabitants of said state as to the inhabitants of other states and the territories of the United States." Act Feb. 20, 1811, c. 21, § 3; Act April 14, c. 57, 2 Stat. 642, 703. This declaration, together with the provisions of the Constitution of the United States vesting in Congress the power to regulate commerce with foreign nations among the several states, and

with the Indian tribes, and prohibiting the states, without the consent of Congress, from levying any duty of tonnage, secures to every one the free use of the banks of the river for certain purposes. Cannon v. New Orleans, 20 Wall. 577, 22 L. Ed. 417. The Civil Code declares that all the navigable waters of the state are public highways, and that the use of the banks is public. Civ. Code, 453, 455, et seq.; City of New Orleans v. Wilmot, 31 La. Ann. 65. The state merely administers such property for the benefit of the public, or, where it is within the confines of municipal corporations established by it, usually confides the administration to such corporations; and it is well settled that the state, or the corporation authorized by it, may, by way and for the purposes of such administration, improve the property by the construction of wharves, landings, and other facilities, for the use of which a charge may be made. City of N. O. v. N. O., M. & C. R. Co., 27 La. Ann. 414.

By its charter of 1870 (Act No. 7, p. 30, extra session of 1870), and the amendment thereto (Act No. 48, p. 145, of 1871), and of 1882 (Act No. 20, p. 14, of the session), this power of administration, with respect to the river banks within its limits, was conferred upon the city of New Orleans; and, in the exercise thereof, the city, in 1891, entered into a contract with the Louisiana Construction & Improvement Company whereby that company assumed the obligation of constructing and maintaining the necessary wharves and landings on the river front, and was authorized to receive the revenues therefrom during a period of 10 years; the city reserving the right to grant to railroad companies the privilege of constructing "such improvements and betterments" thereon as the commissioner of public works and the city engineer might consider necessary for the proper transaction of business, and it being agreed that such wharves and landings should remain subject to the regulations imposed by the then exist-

ing ordinances, by which latter provision it was meant that the city should continue to exercise its supervisory and administrative authority, and that certain city officials, such as wharfingers, superintendents, contravention clerks, etc., should continue to discharge their functions.

The state had not, however, conferred upon the city all the authority which, under the Constitution and laws of the United States, it could rightfully exercise with respect to the commerce of the port of New Orleans. The authority to determine where vessels should land for the purpose of receiving and discharging their cargoes, as also to adjust differences between them, and to enforce the laws of the state with respect to nuisances on the levee, had been, by express statute, conferred upon the board of harbor masters, the members of which were authorized to charge the commerce of the port for their services; and the authority to inspect and make surveys of vessels and cargoes, and issue certificates concerning the same, and to take action in cases of complaints against pilots, had been conferred upon state officers called "wardens of the port of New Orleans," who obtained their compensation from the same source as the harbor masters. In 1896 the General Assembly saw fit to change the form of government which had been provided for the city of New Orleans, and accordingly repealed the then existing charter, and adopted Act No. 45, p. 46, of the session of that year, which, as amended, serves as the present charter of the city of New Orleans. From this we make the following excerpts, as containing the specific grants of authority concerning wharves and landings to which the city now assumes to appeal, to wit:

"Sec. 14. The council shall have power * * * to maintain a good sanitary condition in the streets, public places and buildings * * * to open and keep open and free from obstruction all streets, public squares, wharves, landings. * * * Sec.

15. * * * to improve and embellish the public squares, parks and places, * * * to construct and maintain wharves and landings and to construct sheds and buildings thereon to protect merchandise in transit, and to prescribe and collect such charges, wharfage and levee dues as will pay for the construction and maintenance, lighting and policing of the same and no more, so as to make the port of New Orleans as near a free port as possible."

Act No. 70 of the same session was approved two days later than Act No. 45. It is entitled "An act to establish a commission for the port of New Orleans; to define its powers and duties; to provide a revenue therefor; and to repeal conflicting laws;" and its preamble and context read, in part, as follows:

"Whereas, the port of New Orleans has been gradually extended until it has reached beyond the limits and jurisdiction of the city of New Orleans; and whereas, the divided authority of three parishes and the multiplicity of officials, with their various fees, and the development of contiguous rival ports will act injuriously and prejudicially to the traffic of the port; and whereas, the tax on shipping, exacted for the various charges, fees," etc., "is of such proportions as to threaten to divert the trade to less expensive ports; and whereas, the supervision and control of an intelligent board of state commissioners can consolidate the services of harbor masters and wardens, wharf superintendents and wharfingers, of three parishes, into one set of competent employees, at a reduced expense, can operate and improve the wharves and other terminal facilities of the port, and greatly develop and expand its commerce, by removing many of the obstacles now placed in the way of advancement. * * * Section 1. Be it enacted * * * that the Governor is hereby * * * authorized to appoint a board of commissioners to be known as the board of commission-

ers of the port of New Orleans. Sec. 2. * * * Said board shall have power to regulate the commerce and traffic of the port of New Orleans in such manner as may, in their judgment, be best for its maintenance and development. * * * They shall be empowered, and it shall be their duty, to take charge of and to administer the public wharves of the city of New Orleans; to construct new wharves, where necessary; to erect sheds thereon to protect merchandise in transit; to place and keep the wharves, sheds, levees and approaches in good condition; to maintain sufficient depth of water; and to provide for lighting and policing such wharves and sheds; to defray such expenses, they shall charge upon the shipping visiting the port for the use of wharves," etc., "of the port of New Orleans [here follow specifications of charges]: * * * provided, that nothing in this act shall apply to wharves owned by riparian proprietors, whether individuals, firms or corporations, and maintained and used by the owner or owners, or their lessees. , * * * Sec. 4. * * * All laws and ordinances regarding the appointment and fees governing harbormasters and wardens, wharfingers and wharf superintendents, and any and all laws conflicting with this act are hereby repealed and the authority and control heretofore vested in them is hereby vested in the board of commissioners of the port of New Orleans. * * * Sec. 7. * * * It shall be the duty of said board to examine and investigate all questions relating to the interest of the port of New Orleans, to regulate the same so far as it is in their power under this act, or as hereafter amended, and, annually, to make a printed, classified report to the Governor * * * of all receipts and disbursements, the number of arrivals and departures of vessels and crafts, the exports and imports of merchandise," etc., "and on the general management of the business of the port and the condition of the improvements.

* * * Sec. 9. * * * The board shall be authorized and empowered to acquire, by purchase or by expropriation, the lease of the wharves now held by the Louisiana Construction & Improvement Company, and it is made the duty of the common council of the city of New Orleans to provide for the payment of the price of such purchase or expropriation out of the funds under their control: provided, that the price to be paid shall be satisfactory to said council." Acts 1896, pp. 102–105.

Shortly after its adoption, the act from which the foregoing excerpts are taken was attacked as unconstitutional, and, whilst this court held that it did not create a corporation, within the meaning of certain provisions of the organic law, its constitutionality was maintained. It was also held that the General Assembly, in establishing and conferring authority upon the board, had not impinged upon the rights secured to the people of New Orleans by article 253 of the Constitution of 1879, and that the state was at liberty, without resorting to the courts, to resume control of the property of which the public has the use. Duffy et al. v. City et al., 49 La. Ann. 114, 21 South. 179.

In the present Constitution the board is recognized by article 320, which reads, in part, "Provided that nothing herein contained shall be so construed as to prevent the Legislature from creating boards, or commissions, whose powers shall extend in, and beyond, the parish of Orleans, or as affecting present boards of that character." In 1900 an act was passed (Acts 1900, pp. 44–46, No. 36) amending Act No. 70 of 1896 in several particulars, and reading, in part, as follows: "Sec. 2. * .* * They [the board] shall have and enjoy all the rights, powers and immunities incident to corporations. * * * Sec. 4. * * * All laws within the jurisdiction of this commission and ordinances of the city of New Orleans imposing penalties for violating the rules and regulations gov-

erning the management of the wharves and landings in force and effect July 9, 1896, shall remain in force and effect and may be enforced by said commissioners. * * * Sec. 9. * * * Said commission shall have power to expropriate any property, wharves, or landings necessary to be expropriated for the benefit of the commerce of the port and harbor of New Orleans, in accordance with the expropriation laws of the state."

It does not appear in the record, but will, no doubt, be conceded, that the lease of the construction and improvement company was expropriated or otherwise acquired under the authority of the foregoing legislation, and the plaintiff thereupon took charge of the wharves and landings which were included therein. In August, 1900, the city of New Orleans passed an ordinance (No. 147, N. C. S.) creating a belt railroad board, and looking to the construction of a public belt railroad. No immediate action in that direction was taken, however, and some time later the projet of another ordinance, more specifically defining the line of the proposed road, was submitted to the proper committee of the council, and by that committee referred to the board of port commissioners for its approval, and upon August 12, 1902, the board adopted a resolution reading as follows:

"Resolved: That the board * * * approve the dedication, for the purpose of a public belt railroad reservation, of certain space on the river front between Toledano and Louisa streets, as is defined in the ordinance now before the committee on street and landings for approval, in so far as concerns the space or reservation within the jurisdiction of the board: * * * provided, that the approval of the board shall remain in force only so long as the public belt is operated and controlled by a public commission in accordance with the provisions of Ordinance No. 147, N. C. S.: and provided further, that the construction of said public belt

system shall be of such a character, of road bed and rails, as will allow the paving between the tracks at the intersections of all streets from Toledano to Louisa street and shall be so constructed at all points on the river front where the said system shall encroach upon the present roadways existing on the river front and now used by vehicles: and provided further, that it shall be unlawful to park cars at any point on said public belt railroad system where the space between the outer rail of such tracks and the bulk head of the wharf shall be less than thirty feet."

In the meanwhile—that is to say, in March, 1902—a case between the Illinois Central Railroad Company and the present plaintiff, involving an interpretation of the authority conferred on the latter, had been presented to this court, and it had been held that "authority over the public interest connected with the port of New Orleans is vested primarily in the Legislature; * * * that by Act No. 70, p. 102, of 1896, and Act No. 30, p. 44, of 1900, the Legislature has delegated the authority, in its plenitude, to the dock board [meaning plaintiff herein], save and except, however, in connection with private wharves." State ex rel. Illinois Cent. R. Co. v. Board, 109 La. 433, 434, 33 South. 385. Thereafter, in February, 1903, the city council passed another ordinance (No. 1615, N. C. S.), over the mayor's veto, and without the approval of the board of commissioners of the port, authorizing its codefendant herein to build and maintain a belt railroad upon certain lines and conditions therein specified. The ordinance as thus passed was attacked by the mayor in a proceeding to which neither the city of New Orleans nor the board of commissioners of the port of New Orleans were parties, and, in affirming a judgment dismissing the same, this court said: "The city has not bound itself, hard and fast, for a stated consideration, to furnish this right of way. She transferred the

right she was authorized to transfer; that is, the right she owns and controls. If she did not have the authority, she did not transfer the right. As between the city and the defendant [the grantee under the ordinance], she is bound, in good faith, to carry out the terms of the ordinance." Capdevielle v. N. O. & S. F. R. Co., 110 La. 915, 34 South. 872.

It is not asserted that the ordinance in question in the case cited, and in question here, is the same as that which received the approval of the plaintiff, or that it contains the conditions upon which that approval was given. On the contrary, in the brief last filed on behalf of the railroad company, defendant herein, it is practically admitted that such is not the case. The counsel say: "The only case made by the pleadings, and the only case argued in the court below, was that the city of New Orleans was without any authority whatever to locate the public belt on the river front, through or touching the landings under the administrative control of the port commissioners, without that commission's express consent and concurrence. It was averred that the port commission had given its consent to the projet of an ordinance locating the belt reservation, but that no consent had been given to the ordinance attacked, and that the consent of the commission to that ordinance had not even been asked, and therefore it was null, because of such want of consent. No complaint was made of the ordinance because it did not embody the conditions sought to be imposed by the port commission in its consent given to the projet of the ordinance for the location of the public belt reservation. It was not set up that those conditions were reasonable, that the defendants did not intend to comply with them, and that compliance with them was necessary for the convenience of the commerce of the city, and to the proper use by the public of the wharves and landings. * * * If he [plaintiff's counsel] had made, in the pleadings, the case which he now sets up—i. e., that he does not wish to annul the ordinance, or to stand in the way of the construction by the defendants of the public belt under Ordinance No. 1615 N. C. S., but that he only asks the court to declare that the defendants shall not construct the belt unless they comply with the conditions imposed upon its construction in the resolution of August 12, 1902—the defendants might, and, indeed, would, have come in and declared that there was no necessity for a suit to compel compliance with such requirements; that they never had any intention other than compliance therewith; that they had never been put in default, and had never been given an opportunity to declare themselves in the matter."

### Opinion.

If, as the plaintiff alleges, it has exclusive jurisdiction to determine whether a railway shall be built and operated on the landings, and upon what conditions, the proper and only defenses of which the city and the railroad company could avail themselves would be either that they have no intention of building such a railway, or that the plaintiff has consented that it shall be built and operated in the manner proposed by them. They do not, however, disclaim the intention. On the contrary, they affirm the validity of the ordinance which provides that a railway shall be built and operated. Nor do they allege that the plaintiff has consented that a railway shall be built and operated as so provided, or that they are willing to comply with the conditions imposed or to be imposed by it. On the contrary, they allege that they are proceeding under authority vested in the city alone, and they deny that the consent of the plaintiff is necessary, or that they are under obligations to comply with any conditions which the plaintiff has imposed or might impose.

The issue presented by the pleadings, therefore, is whether the plaintiff or the city is vested by law with jurisdiction to determine upon what conditions, if at all, a public belt railway shall be constructed and operated over the public landings along the river front of the port of New Orleans.

It is conceded that the plaintiff is charged with the administration of the landings, but it is argued that the granting or withholding of permission to build and operate a railway thereon is the exercise of legislative power, which, in view of the constitutional requirements that "the powers of government of the state of Louisiana shall be divided into three distinct departments, each of them to be confined to a separate body of magistracy," has not been, and could not be, vested in plaintiff, but is vested in the city of New Orleans. The answer to this argument is that the state, an incorporeal being, charged with the administration of the corporeal property in question, must necessarily act through an agent, and that whereas, until 1896, it acted through the city of New Orleans, it then appointed as its agent for the purposes of such administration the board of port commissioners, withdrew from the city all authority that had ever been granted to it in that behalf, "save," as this court has decided, "in connection with private wharves," and, in language at once more specific and more comprehensive, conferred that authority upon the agent so appointed, and that the constitutionality of the statute by which this change of agents was effected has not been attacked by any of the pleadings in this case.

It is said that by Acts Nos. 108 and 131, pp. 165, 227, of 1902, the city is authorized to sell at auction a public belt railway franchise, and to construct, maintain, and operate belt railroads, from which it is argued that such railways may be constructed, without the consent of the port commission, upon the wharves and landings, as upon other public places. The premises do not, however, support the conclusion. Neither of the statutes mentioned refers to the wharves or landings, neither purports to withdraw any of the authority conferred on the port commission, and both can be so construed with the statutes conferring that authority as to give effect to all.

In conclusion, it may be remarked that, whilst the city of New Orleans has no present jurisdiction over the wharves and landings of the port of New Orleans, as such, it is quite likely that she has jurisdiction in other directions, the exercise of which may incidentally affect that property, just as the exercise by the states of the power to enforce quarantine and inspection laws may incidentally affect commerce, the power to regulate which is vested in Congress. Such jurisdiction does not, however, extend to matters relating merely to the control and administration of the property, and hence does not authorize the interference therewith which is threatened and complained of in this case.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the plaintiff, enjoining the defendants, the New Orleans & San Francisco Railroad Company and the city of New Orleans, from acting under and enforcing the ordinance of the city of New Orleans, No. 1615, New Council Series, in so far as the same authorizes the construction and maintenance of a railroad on the wharves or landings of the port of New Orleans, or any part thereof, without the consent and approval of the plaintiff first had and obtained. It is further ordered, adjudged, and decreed that the defendants pay costs in both courts.