## Duclaud *v.* Rousseau.

S. intervened in the marriage contract between the defendant and her husband, and made a donation to the former of the right of habitation in a house, with certain rights of use upon a lot of ground, subject to the condition that, in case of a sale of the property by the donor, or of her death, the rights of habitation and use should cease. It was stipulated that, in either of those events, the donee should receive from the donor or her succession, a certain sum as an indemnity. The contract in which the donation was made was registered by the recorder of mortgages. S. subsequently mortgaged the property to plaintiff. The property was seized and sold by the latter, on a confession of judgment by S., and purchased by plaintiff at the sheriff's sale. The certificate of the recorder of mortgages produced at the time of executing the mortgage, showed the property to be free from mortgage. and made no mention of the donation; but the inscription of the marriage contract, and the encumbrance created by it, were notified to the bidders at the time of the sale. In an action by the purchaser to compel the donee to surrender the premises to him : *Held,* that the inscription of the marriage contract anterior to the execution of the mortgage, was notice to the plaintiff of its existence ; and that the execution of the mortgage and the confession of judgment by the donor, do not amount to a *sale* of the property, and cannot affect the donee's right to the servitude established in her favor.

A mortgage is a species of alienation, but not a sale. It is an alienation of a right on the property—not of the property itself, the title to which, as well as the possession, remains in the owner.

The execution of a mortgage does not imply the debtor's assent to any judicial sale subsequently made to satisfy the debt,

The nature of the evidence upon which a judgment is obtained—whether by the confession of the debtor or otherwise, does not affect the general rule that, in sales under execution, the law neither requires nor presumes the assent of the debtor. Such a sale can never be considered a voluntary one.

Every condition attached to a donation must be so performed, as it is probable that the parties intended it should be performed. C. C. 2032.

In the interpretation of donations, words must be understood according to their usual signification and popular use ; and where the intention of the parties is doubtful, the doubt must inure to the benefit of the donee. C. C. 1940, 1942.

A creditor cannot sue to annul a contract, made by the debtor, before his debt accrued. C. C. 1988.

APPEAL from the Parish Court of New Orleans, *Maurian,* J. *Eugenie Savary,* the widow of one *Joseph Savary,* became a party to a marriage contract, executed on the 19 December, 1836, between the defendant and *Joseph Rousseau,* by which she made to her and her children a donation *inter vivos,* as follows : "1o. Du droit d'habitation et d'usage, pendant sa vie et jusqu'au décès de la future épouse, et aussi pendant la vie des enfants qui pourraient naître du mariage des futurs époux, d'une maison briquetée entre poteaux, d'environ 23 pieds de face, sur 25 pieds de profondeur, que la dite veuve *Savary* avait fait construire sur partie d'un lot de terre situé rue St. Antoine, entre les rues Amour et Bons Enfants,faubourg Marigny, sur lequel existait déjà des edifices où elle résidait. 2o. Du droit de se servir et d'usage en commun avec la dite veuve *Savary,* pendant tout le tems que durera le droit d'habitation ci-dessus donné, de la cour commune à cette maison et aux édifices où la dite veuve *Savary* réside, ainsi que de la cuisine qui fait partie des dits édifices le tout suivant certaines conditions mentionnées au dit acte, savoir : 1o. Dans le cas de vente par la veuve *Savary* de la propriété dont fait partie la dite maison, dont le

droit d'habitation est donné à la future épouse ; et, encore, en cas de décès de la dite veuve *Savary*,le droit d'habitation et d'usage *cessera d'exister*, et la future épouse devra rendre les lieux dans le mois de l'évènement de l'un ou de l'autre de ces deux cas ; mais *la dite veuve Savary ou sa succession* devra payer à la dite future épouse, pour l'indemniser du dit droit d'habitation et d'usage, la somme de $1,000, dont la veuve *Savary* fait donation entre-vifs à la future épouse, ce acceptant dans l'un et dans l'autre des deux cas ci-dessus prévus; laquelle somme sera payée à la future épouse dans- le courant du mois qui suivra l'évènement qui donnera lieu à la cessation du dit droit d'habitation et d'usage."

This contract was recorded by the register of mortgages a few days after its date. The donor subsequently executed a mortgage on the same lot of ground, and the certificate produced on the occasion from the register states, the property to be free from any mortgage in the name of *Mad. Savary*. The debt secured by the mortgage, not having been paid at maturity, plaintiff obtained a judgment on the confession of the mortgagor, and caused the lot to be sold under execution, and became the purchaser thereof. Notice of the existence of the marriage contract and of the encumbrance resulting from it, was given at the time of this sale. The present action was instituted to compel the defendant to surrender the possession of the property to the plaintiff, the purchaser, at the judicial sale. The court below was of opinion : "1st. That the sale by the sheriff, being made under a writ issued on the mortgage consented to by *Mrs. Savary*, on the property sold, must be viewed as though it had been made by *Mrs. Savary* herself : and that consequently the resolutory condition affixed to the marriage contract is fulfilled. 2d. That the plaintiff, as purchaser at the sheriff's sale, acquired nothing but the rights which *Mrs. Savary* was possessed of, with the charges corresponding thereto. 3d. That the plaintiff, as the mortgage creditor, and therefore, the assignee of *Mrs. Savary*, could not avail himself of her implied consent to have the property mortgaged sold, without making himself liable to all the obligations, without the performance of which *Mrs. Savary* could not sell the property. 4th. That *Mrs. Savary*, according to the marriage contract, could not have sold the property without paying $1,000 to the defendant. 5th. That the defendant was legally put in default, as to the delivery of the premises, but that no offer to pay her the $1,000 was proved, nor even alleged by the plaintiff. 6th. That although under these circumstances, judgment could not be rendered in favor of the plaintiff ; yet, justice required that that this litigation should be put an end to, by a judgment, condemning the defendant to surrender the property and the plaintiff to pay $1,000." It accordingly ordered the defendant to surrender the property in dispute to the plaintiff, upon the latter paying to her $1,000, and costs. From this judgment the plaintiff appealed.

*Deslix*, for the appellant, contended that the execution of the mortgage, and subsequent sale under a judgment by confession, amounted to a voluntary alienation of the property by the donor, and such as was contemplated by the condition. Code, law 7, *de Rebus Alien.* Merlin, Répert. *Verbo* Hypothèque, sec. 1, § 2. Denisart, Collection, *verbo* Aliénation. Ferrière, Dict. de Pratique, *verbo* Aliénation. Pothier, Coutume d'Orleans, vol. 2, p. 435. Sirey, vol. 13, part 2, p. 34.

*Le Gardeur*, for the defendant. The whole controversy between the parties turns upon a correct interpretation of the condition, the accomplishment of which was to operate as a dissolution of the appellee's rights under the donation. With a view to arrive at that correct interpretation, certain questions have been propounded by the court.

DUCLAUD
*v.*
ROUSSEAU.

DUCLAUD
v.
ROUSSEAU.

*I. Did the mortgage given by the widow Savary affect in any manner the rights of the defendant?*

The principles of law which relate to the accomplishment of conditions are: 1st. That, in general, conditions ought to be accomplished *in formâ specificâ*. 2d. That they ought to be accomplished in the manner that was probably intended by the parties. 3d. That nothing can be added to or omitted from a condition, to make it more onerous. 4th and lastly. That a condition cannot be extended from one case to another, on account of analogy between those cases· Civil Code, art. 2032. Pothier on Obligations, no·. 206. Toullier, vol. 6, no· 586. If these principles be correct, it is plain that the mortgage granted by the widow *Savary* could not affect the rights of the defendant. What was the condition, the accomplishment of which was to operate as a dissolution of those rights? a *sale* of the property by *Mad. Savary*. Now, taking for granted that there exists the greatest possible analogy between a *mortgage* and a *sale*, still it cannot be denied that they are different contracts, and governed by different rules, and as a condition cannot be extended from one case to another on account of analogy between them, the inevitable conclusion is that, the condition under consideration was not affected by the mortgage with which *Mad. Savary* was pleased to encumber the property in favor of *Duclaud*. But it is contended that by this mortgage she *alienated* the property, because a mortgage is an alienation. This is true. But an alienation is not a sale. The word alienation is a generical term, which embraces all the different manners in which our rights to property may be disposed of; it is the *genus*, and each different manner of disposing the *species*. Thus it is that a donation, a mortgage, a sale, a pledge, are alienations, and yet a donation is not a pledge, a mortgage is not a sale. Now, the parties did not agree that the donation should be dissolved in case the property should be *alienated* by *Mad. Savary*, but in case it should be *sold* by her; thus expressly defining the kind of alienation which was to operate as a dissolution of the contract, and thereby excluding all other kinds from having a like effect. *Inclusio unius fit exclusio alterius.* Suppose, for a moment that A should give to B a special power to *sell* certain property; that B should, under that power, *mortgage* the property; that the mortgage creditor should cause the property to be seized and sold, and it should be adjudicated to C. In an action by A against C for the recovery of the property, would the mortgage granted by B affect the rights of A? Certainly not. Because although a mortgage is an alienation, the power to *sell* does not include the power to *mortgage*, a sale and a mortgage being different kinds of alienation. Zachariæ, Droit Civil Français, vol. 3, § 412, p. 126, *in fine*. Civil Code, art. 2966. Here the parties have agreed upon a *sale* of the property as the dissolving condition of the contract, and the mortgaging of the property cannot affect their rights, because a mortgage is not a sale. It is, however, contended that the first question propounded by the court, must be solved in the affirmative, because a mortgage implies the debtor's consent to the judicial sale made upon the creditor's demand. To this proposition we cannot assent. The power of the creditor to have the property sold is not given to him by the *mortgage*, but originates in the pre-existing obligation, the performance of which is secured by the mortgage, which is but an accessory to it. This is clearly explained by the following quotation from Merlin's Répertoire de Jurisprudence, Vo. Hypothèque, sec. 11, § 111, art. 1, no. 1, to wit:

"Quiconque s'est obligé personnellement, est tenu de remplir son engagement sur tous ses biens mobiliers et immobiliers, présens et à venir.

Les biens du débiteur sont le gage commun de ses créanciers; et le prix s'en distribue entre eux par contribution, à moins qu'il n'y ait entre les créanciers des causes légitimes de préférence.

Les causes légitimes de préférence, sont les privilèges et les hypothèques.

Ces trois articles présentent la théorie des hypothèques avec une précision et une netteté admirables. Toute obligation personnelle peut se résoudre définitivement en celle de payer une somme déterminée, et le débiteur peut-être contraint à acquitter toutes les sommes dûes, par la vente forcée de ses biens, quelle que soit leur nature, et quelle que soit l'époque à laquelle ils lui adviennent. Le prix de ces biens doit être distribué entre tous les créanciers indistinctement, à moins qu'il n'y ait entre eux des causes légitimes de préférence. Ce sont ces causes légitimes de préférence qui portent le nom de privilèges et d'hypothèques. Les préférences ont lieu dans chacune des distributions successives, lors même que le prix des biens serait plus que

suffisant pour acquitter toutes les dettes; mais elles sont surtout d'une très grande importance, lorsque le prix des biens n'égale pas le montant des dettes.

Cette exposition, tout succincte qu'elle est, nous découvre la nature et les effets généraux de l'hypothèque. L'hypothèque peut être définie l'affectation particulière d'un bien appartenant au débiteur pour la sûreté de l'exécution de ses engagemens. Elle établit *un droit accessoire à celui qui résulte d'une obligation principale*, en telle sorte qu'il ne peut y avoir d'hypothèque qu'autant qu'il y a une obligation principale à laquelle l'hypothèque trouve à se rattacher. L'hypothèque est un droit dans la chose, *jus in re*, qui affecte la chose elle-même, *et qui consiste principalement à assurer au créancier qui en est investi, la préférence sur d'autres créanciers, dans la distribution du prix de la chose hypothéquée. L'hypothèque ne déplace pas même la possession, du moins le plus souvent ; l'une et l'autre continuent de rester dans la main du débiteur dont le bien est grevé d'hypothèque.*

Il est aisé d'apercevoir que *l'hypothèque considérée isolément dans les rapports qu'elle établit entre le débiteur et le créancier, n'est d'aucune utilité actuelle pour ce dernier ;* en effet, tant que la chose hypothéquée reste sur la tête du débiteur, le créancier hypothécaire peut bien en provoquer la vente pour être payé sur le prix ; *mais un créancier non hypothécaire a, tout de même, le droit de contraindre son débiteur à l'exécution de ses engagemens, en faisant vendre ses biens*, et en s'en faisant délivrer le prix, à concurrence de sa créance. *L'hypothèque ne prend de l'efficacité dans la main du créancier hypothécaire, que dans le cas où il suit la chose hypothéquée contre le tiers qui l'a acquise ; et dans celui où, se trouvant en concurrence avec divers créanciers du même débiteur, il réclame la préférence que lui assigne son titre.*"

If, as is clearly shown by Merlin, the power to sell, originating in a pre-existing obligation, exists before the mortgage is granted; if the ownership and possession of the mortgaged property continue in the hands of the debtor—the consequence must be that the *mortgage* granted by *Mad. Savary* to *Duclaud*, did not in any manner affect the rights of the defendant. But be this as it may, it will not be contested that, in mortgaging the property to *Duclaud, Mad. Savary* mortgaged that property as it stood in her possession. She did not mortgage an unencumbered property, because the property was encumbered in her hands; *non dat qui non habet.* Therefore, the rights of *Duclaud* attached to an encumbered property; it was that property which he caused to be sold, that property which he purchased. The rights of the defendant were clearly then, unaffected by the mortgage and the proceedings under it. It may be true, as is contended by the opposite party, that *Mad. Savary*, when the hypothecation in favor of *Duclaud* took place, neglected to disclose the encumbrance with which the property was burthened; but it is equally true that this neglect, although it may give rise to an action against her, can have no effect upon the rights of the defendant, who neither intervened in, nor assented to the act, which, so far as she is concerned, is *res inter alios acta.*

II. *In sales under execution is consent presumed on the part of the debtor?*

This question turns exclusively upon the nature and character of sales under execution so far as the debtor is concerned, for if it can be shown by conclusive authority that those sales are considered as being made without the consent and against the wish of the debtor, it is plain that his consent cannot be presumed. Zachariæ, in his Cours de Droit Civil Français, vol. 2, p. 492, § 350, says:

" La vente est *volontaire* lorsque le propriétaire y procède de son plein gré. La vente est *nécessaire*, lorsqu'il est obligé d'y consentir par suite d'une *nécessité* juridique à laquelle il se trouve soumis; c'est ce qui a lieu dans les circonstances suivantes:

*Quand un créancier poursuit contre son débiteur la vente de biens qui appartiennent à ce dernier, &c.*

*La vente que les créanciers poursuivent contre leur débiteur ou contre le tiersdétenteur d'un immeuble qui leur est hypothéqué, est plus spécialement appelée vente ou expropriation forcée, par opposition aux autres ventes nécessaires qui présentent plus ou moins d'affinité avec les ventes volontaires.*

Pothier, in his "Traité de la Procédure Civile," part IV, chap. II, section v, page 209, vol. 9, (edition of 1835), says: " La saisie réelle est un acte judicaire, par lequel un créancier met *sous la main de justice* l'héritage, ou autres immeubles de son débiteur, a l'effet *d'en poursuivre* la vente, pour être payé sur le prix." And at page 258, " L'adjudication contient une véritable vente, que *la justice*, pour le saisi et *malgré lui*, fait à l'adjudicataire de l'héritage saisi."

DUCLAUD
v
ROUSSEAU.

Domat (book I. title II, sect. XIII, no. 9), says: "Les créanciers ont droit de faire vendre les biens de leurs débiteurs; *et ces sortes de ventes sont forcées*, et se font en justice." And at no. 17, of the 11th section of the same book and title: "La rédhibition de la diminution du prix, à cause des défauts de la chose vendue, n'a pas lieu dans les ventes publiques, qui se font en justice. Car dans ces ventes, *ce n'est pas le propriétaire qui vend*, mais *c'est l'autorité de la justice qui tient lieu du vendeur*, et qui n'adjuge la chose que telle qu'elle est."

The court's attention is further called to the following quotations from Troplong's commentary on Sale, to wit:

"No. 17.   Nous terminerons ce que nous avons à dire sur ce point, en rappellant que, quoique le consentement doive être libre, néanmoins on peut pour cause d'utilité publique *contraindre* une personne à vendre son bien.   *Des motifs non moins plausibles, autorisent aussi l'expropriation forcée ou saisie immobilière.*

"No. 432,   L'obligation de garantir l'acheteur de tous troubles et éviction est de droit dans le contrat de vente.   Mais la disposition de notre article s'applique-t-elle aux ventes sur saisie?   A entendre *M. Pigeau*, l'adjudicataire aurait contre le saisi et les créanciers une action en garantie.   Mais cette opinion et irréfléchie. *Ni le saisi, ni les créanciers ns sont les vendeurs.   L'un est dépouillé malgré lui de sa propriété*, les autres ne font que solliciter de la justice l'exécution de leur contrat.   A vrai dire, *c'est la justice qui vend.*"

"No. 584.   Dans l'ancienne jurisprudence on mettait parmi les vices rédhibitoires, l'incommodité qu'une servitude cachée faisait éprouver à l'acquéreur. Si le Code Civil avait suivi ce système, on devrait décider, sans plus ample examen, que l'acheteur d'un immeuble *par voie d'expropriation forcée*, n'a pas d'action pour se faire indemniser d'une servitude latente qui vient tout-à-coup diminuer la valeur de l'objet acheté.   Mais le Code a suivi un autre classement. Néanmoins, je pense que les motifs qui ont fait édicter l'art. 1649, doivent étendre sa disposition au cas d'une servitude occulte, dont l'acquéreur sur *expropriation forcée* se trouve grevé.   La raison en est, qu'*il n'y a de vendeur dans ces sortes de ventes que la justice.*

Our own jurisprudence has adopted the principles of foreign civilians on this subject.   Thus in Martin's Reports, vol. 11, page 611, the Supreme Court, in examining into a sheriff's sale, say: "Laws which deprive men of their property, *without their consent*, should be strictly pursued."   Thus again, in the same volume, page 710: "All laws which deprive the citizen of his property, *against his wish*, must be strictly pursued."

These authorities show conclusively that, in a sale under execution, the debtor is deprived of his property without his consent, against his wish, and by the sole operation of law.   Indeed, this is the very reason why those sales are called, in our jurisprudence, *forced* sales, and, in the French law, *expropriations forcées;* for if the debtor's consent could be presumed, the sale would not be a *forced*, but a *voluntary* one.

We have, therefore, shown that the mortgage given by *Mad. Savary*, did not in any manner affect the rights of the defendant; that, after seizure under execution, there is no difference between a judgment on a mortgage debt and a judgment on an ordinary debt; and lastly, that in sales under execution, no consent is presumed on the part of the debtor.   What are we to conclude from this? Unquestionably that the *forced* sale relied upon by the plaintiff, is not the *voluntary* sale contemplated by the parties to the donation; that the resolutory condition has therefore failed; and that the defendant is clearly entitled to a judgment, quieting her in the enjoyment and possession of the rights vested in her by the donation.

The judgment of the court was pronounced by

ROST, J.   The widow of *Joseph Savary* intervened in the marriage contract between the defendant and her husband, and made a donation to the future wife and her children, of the right of habitation in a house in the city of New Orleans, and of certain rights of use of the town lot on part of which it is built, on condition that, in case of the sale of the property *by the donor*, or of the death of said donor, those rights of use and habitation should cease to exist, and the donor, or her succession, should, in either case, pay the future wife the sum of $1,000, as an indemnity, within one month from the death or sale.   This contract was

<small>Duclaud<br>v.<br>Rousseau.</small>

inscribed in the office of the recorder of mortgages, five days after its date. Subsequently, the widow *Savary* gave the plaintiff a mortgage on the same town lot, and the certificate of the recorder produced on that occasion shows the property to have been free from mortgage in her name, and makes no mention of the donation. The debt, to secure the payment of which the mortgage was given, not having been paid at maturity, the plaintiff obtained a judgment upon it, on the confession of *Mad. Savary*, and caused the house and lot in controversy to be seized and sold under execution. The inscription of the marriage contract and the encumbrance it creates upon the property, were notified to the bidders at the time of the adjudication, and are related at large in the sale made by the sheriff.

The plaintiff has instituted this action to compel the defendant to surrender to him the possession of the premises, on the following grounds: 1. That the plaintiff had no notice of the encumbrance, at the time he took the mortgage. 2. That the mortgage was a voluntary alienation of the property, to the amount of the debt. 3. That the giving of the mortgage and the subsequent confession of judgment on the mortgage debt, constitute the sale by the sheriff the voluntary act of *Mad. Savary*; and that, in consequence of said sale, the rights of use and habitation claimed by the defendant, have ceased to exist. 4. That the right of *Mad. Savary* to annul the donation, by selling the property, was not personal, and could be exercised for her by any of her creditors, and particularly by a mortgage creditor.

The defendant denies all the allegations of the petition, and alleges that the sale of the property by the sheriff, cannot be viewed as being a sale by *the widow Savary*, and is not the dissolving condition contemplated by the parties in the act of donation; that should the court be of a different opinion, the plaintiff is bound to pay her the indemnity stipulated in her favor by the contract establishing the servitude complained of.

The court below, being of opinion that the mortgage and subsequent sheriff's sale put an end to the rights of use and habitation of the defendant, and that she was equitably entitled to the indemnity claimed, gave judgment in favor of the plaintiff, on condition that he should pay her the sum of one thousand dollars. From this judgment the plaintiff has appealed, and the defendant asks that it be amended in her favor.

The inscription of the marriage contract being anterior to the date of the mortgage given to the plaintiff, affected him with notice, and his right to recover rests solely upon the question, whether the donation was dissolved by the sheriff's sale. Writers on the civil law assert that, a mortgage is a species of alienation. This is true, but it is not a sale, and the contract in this case is only to be dissolved by a sale. A mortgage is the alienation of a right in the property, not the alienation of the property itself. Perfect ownership becomes imperfect when the property is mortgaged, by the alienation of that real right; but the title and the possession still remain in the owner. Troplong, Hypoth. 2d vol. art. 386. Merlin, Rép. de Jurisp. verbo Hypothèque, sect. 2d, § 3, art, 1. Civil Code, arts. 3246, 3248.

The fact of giving a mortgage, no more implies the debtor's assent to the judicial sale subsequently made to satisfy the debt thus secured, than the fact of contracting an ordinary debt would imply it. The probable intention of *Mad. Savary* when she gave the mortgage, was to pay the debt at maturity and have the mortgage released. It cannot be presumed that she intended to violate her obligation. The law views the property of debtors as the common pledge of their

creditors, and the right to have it sold does not depend upon the nature of their obligations, but is inherent to the obligations themselves, whatever they be. As long as the other creditors of *Mad. Savary* did not interfere, the only additional right which the mortgage gave the plaintiff, was that of having the mortgaged property seized and sold first, instead of proceeding as the law provides in ordinary seizures under execution.

The fact that the widow *Savary* honestly confessed the justice of a claim against which she had no defence to make, has no material bearing on this controversy. The nature of the evidence upon which a judgment is obtained does not affect the general rule that, in sales under execution the law neither requires nor presumes the assent of the judgment debtor. See Domat, b. 1st. tit. 2, sect. 13, no. 9. Troplong, De la Vente, nos. 17, 432, 584, 585. Sales under execution are regulatinns of the use of property falling within the eminent domain of the sovereign. He alone speaks in the writ, commanding the sheriff to seize, take into his custody, advertise and sell the property of debtors; he alone passes to the purchaser the titles of the former owner. In the words of Troplong, it is justice alone which sells. Troplong, Vente, art. 584.

Our courts have uniformly considered that sheriff's sales were made without the consent of the debtor, and have accordingly held that, the laws regulating the manner of making those sales, should be strictly pursued. 11 Mart. 611, 710. But if the positions assumed by the plaintiff's counsel were conceded, an insuperable difficulty would still remain. The counsel has attempted to establish them by analogies and legal inferences, which no one but a lawyer can understand. Is it to be supposed that the illiterate woman who entered into the contract under consideration understood them, and had them in contemplation at the time. Every condition attached to a donation, must be performed in the manner that it is probable the parties intended that it should be. In the interpretatton of donations, words must be understood in their usual signification and popular use; and where the intention of the parties is doubtful, the doubt should inure to the benefit of the donee. Civil Code, arts. 2032, 1940, 1952.

We are well convinced that the only dissolving conditions contemplated by the parties, were either an ordinary sale effected by the donor personally for a price agreed upon by her, or her death happening during the continuance of her possession; and whatever may be the real or supposed analogy between the sale intended and that which took place, we are not at liberty to extend the condition from one case to the other. Pothier, Oblig. no. 206.

The last ground taken by the plaintiff's counsel is answered by what precedes; and moreover, no creditor can annul a contract made by his debtor, before the time his debt accrued. Civil Code, art. 1988.

For the reasons assigned, it is ordered·that the judgment in this case be reversed, and that there be judgment in favor of the defendant, with costs in both courts.