in conflict between the view here expressed and the authorities cited by plaintiffs.

For the reasons assigned, the judgment appealed from is affirmed; appellants to pay the costs.

---

**(109 So. 408)**

No. 27322.

**BOARD OF COM'RS OF PORT OF NEW ORLEANS v. NEW ORLEANS PUBLIC SERVICE, Inc.**

(June 28, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Municipal corporations ⬤⟾719(1).**

In view of Act No. 70 of 1896, as amended by Act No. 36 of 1900, and Act No. 14 of Ex. Sess. 1915, creating board of commissioners of port of New Orleans, board *held* authorized to sell ground purchased for building warehouses to aid commerce, and which was discovered unsuitable for that purpose; Const. 1921, art. 4, § 12, being inapplicable.

**2. Municipal corporations ⬤⟾719(1).**

Sale of idle property, purchased by board of commissioners of port of New Orleans for purpose which proved not feasible, *held* not "grant," within prohibition of Const. 1921, art. 4, § 12.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Grant (In conveyancing.).]

**3. Municipal corporations ⬤⟾719(1)—Land purchased by board of commissioners of port of New Orleans from proceeds of bonds held not subject to mortgage purporting to cover land purchased (Civ. Code, art. 3306).**

Land purchased by board of commissioners of port of New Orleans from proceeds of bonds secured by mortgage purporting to cover all lands acquired thereby *held* not subject to mortgage, in view of noncompliance with further stipulations that property acquired should be covered by supplemental ordinances and acts of mortgage specifically describing property, as required by Civ. Code, art. 3306, and where in fact fund derived from bond issue was reimbursed amount of price paid for land.

Brunot and Thompson, JJ., dissenting.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by the Board of Commissioners of the Port of New Orleans against the New Orleans Public Service, Inc., and others. Judgment for plaintiff, and the defendant named appeals. Affirmed.

Dufour, Goldberg & Kammer, of New Orleans, for appellant.

Arthur McGuirk, of New Orleans, for appellee.

O'NIELL, C. J. This is an action to compel the defendant, New Orleans Public Service, Inc., to carry out an agreement to buy from the plaintiff, board of commissioners of the port of New Orleans, at the stipulated price of $125,000, a square of ground in New Orleans. The square is described as bounded by Peters, Water, Orange, and Richard streets, and is in what is called the First district. The Hibernia Bank & Trust Company, being the trustee named in certain mortgages that were granted by the plaintiff, was made party defendant and cited as such, in order to have it judicially determined that the mortgages did not affect the square of ground that is the subject of this suit. The recorder of mortgages was also made party defendant in order, as a safeguard, to have the mortgages declared canceled as to this square of ground. The defendant, Public Service, Inc., admits that it is under obligation to buy the square of ground at the price stated if the plaintiff has the authority in law to make the sale and if the title is not incumbered by the mortgages securing the outstanding bonds of the plaintiff, but avers that it is not certain that the plaintiff has authority in law to sell the land, and is not certain that the title is not affected by the mortgages referred to. The Hibernia Bank & Trust Company and the recorder of mortgages, answering the suit, admitted that the plaintiff's allegations

of fact were true, and that the plaintiff's conclusions of law were perhaps also correct, and submitted the matter to the judgment of the court. There was judgment for the plaintiff, declaring that the square of ground was not affected by any of the mortgages granted by the plaintiff, and ordering the inscriptions canceled as to this square of ground, and ordering the defendant, Public Service, Inc., to carry out its obligation to take title to the property and pay the price. The Public Service Inc., has appealed.

This square of ground was bought by the plaintiff from the New Orleans Water Supply Company for $85,000 nearly nine years ago, for the purpose of building on the land warehouses and other structures in aid of the commerce of the port, but the land has never been put to that or any other use by the plaintiff. It is a vacant square, behind the public wharves and landings, distant about 400 feet from the nearest wharf, and separated from the wharves by an intervening street or roadway and the tracks of several railroads. The property was therefore found not suitable to the use for which it was bought, or for any other use in aid of the commerce of the port. It is not and cannot be disputed that the plaintiff ought to be rid of the idle investment, particularly now that the opportunity is presented, not only to avoid a loss, but to make a profit in consequence of the mistake that induced the board to buy the square of ground. The only question is whether, being without special or express authority in the provisions of the Constitution or of the statutes relating to the board, the board is forbidden to sell the land.

[1] Our opinion is that the case is controlled by the doctrine of the decision in the very recent case of Henderson v. City of Shreveport et al., 160 La. 360, 107 So. 139. In that case, the plaintiffs, as resident taxpayers of the city of Shreveport, sought to enjoin the school board from selling and the city from buying a vacant lot which the school board had bought with funds that were dedicated to the purchase of sites for school buildings, but which was afterwards found to be not suitable and not needed for such purpose. There was no statutory authority for a school board to sell real estate, except to "change the location of a schoolhouse, sell or dispose of the old site, and use the proceeds thereof toward procuring a new one." The lot which the school board was about to sell to the city had never been used as a schoolhouse site, and the proceeds of the sale were not intended to be invested then or immediately in a new site. Nevertheless, it was held that, as the school board had no right to hold the vacant lot, and could be compelled by mandamus to dispose of it, after it was known to be of no use for school purposes, the board had the necessary authority to sell it. The court said:

"Manifestly the school board has no right to acquire lands for any other than school purposes, and, since it has no right to acquire lands for any other than school purposes, it follows that it cannot hold lands indefinitely for other than school purposes; and hence it is the plain duty of the school board to divest itself of any land which admittedly, according to the judgment of the board itself, is unnecessary or unsuitable for school purposes; and mandamus would certainly lie to compel the board to divest itself of land so held."

The doctrine is stated more broadly in one of the headnotes of the decision thus:

"Public boards and officers must be authorized to do voluntarily that which they could by mandamus be compelled to do, though not being specially authorized so to do."

In the second section of the statute creating the board of commissioners of the port of New Orleans, Act 70 of 1896, as amended by Act 36 of 1900 and Act 14 of Ex. Sess. 1915, it is declared that the board shall have and enjoy all of the rights, powers, and im-

munities incident to corporations. In State v. Board of Commissioners, 153 La. 664, 96 So. 510, it was said that that provision in the statute meant merely that the board had all of the incidental or implied powers needed by a political corporation to perform the duties that were expressly imposed upon it, or to carry out the objects and purposes for which it was created. The object and purpose for which the board of commissioners of the port of New Orleans was created was to have charge of and administer the public wharves and landings of the port of New Orleans; and, to that end, the board has authority to buy land on which to construct any building that the board may deem necessary in aid of the commerce of the port. The reason why the board has no statutory authority to sell real estate is that all of the real estate owned by the board must be dedicated to public use, and the board has no authority or right to buy land except what is necessary to be administered by the board for public use. To say that the board has no right or authority to sell real estate is merely to state the corollary of the proposition that the board has no right or authority to buy real estate except what is necessary to be held and administered by the board for public use. But, if the board makes the mistake of buying property that is afterwards found to be not necessary or suitable for any public use, the board is obliged and therefore has the right to dispose of it.

Whether the board would have the right to sell any real estate that has once been actually dedicated to public use is a question which we do not decide, because the square of ground that is the subject of this suit was never actually dedicated to a public use.

The principle on which we decided in State v. Board of Commissioners of the Port of New Orleans, 153 La. 664, 96 So. 510, that the board had the right to lease to a private corporation a warehouse which the board had no use for, is appropriate to this case. The board had leased the warehouse, in connection with a wharf and wharfhouse, from the War Department, not because the board had use for the warehouse, but because the board had use for the wharf and wharfhouse and the War Department would not part with them without disposing of the warehouse also. Having so acquired the warehouse, the board found an opportunity to lease it to a private corporation on terms that made the whole transaction profitable. Notwithstanding there was no statutory or express authority for the board to dispose of by leasing any of the property under the board's administration, we maintained that the board had the right to dispose of the unused warehouse in that way because the disposition was a proper consequence of the original transaction by which the board had acquired the wharf and wharfhouse, and which the board had the right to make.

The appellant cites the twelfth section of article 4 of the Constitution, which declares that the funds, credit, property or things of value of the state or of any political corporation thereof shall not be loaned, pledged or granted to or for any person or persons, association or corporation, public or private. In State v. Board of Commissioners, etc., supra, we ruled that the section was not applicable to the case. The transaction in question here is not a "grant" in the meaning of the word in the twelfth section of article 4 of the Constitution. It is not reasonable to suppose that the writers of the Constitution intended that this prohibition against the loaning, pledging or granting of the property of the state or of any political corporation in the state should apply to a transaction like this, for disposing of useless property belonging to a political corporation or board, because, if that was the intention, the Legislature itself could not sanction or authorize

the transaction. Surely that is not true. It is so manifest and so certain that the board of commissioners has the right to convert this idle investment into a profitable transaction that it is not necessary for the Legislature to say so in a special enactment.

Our conclusion is that the judgment appealed from is correct in maintaining that the plaintiff has the right to sell this vacant square of ground.

[3] The judgment is correct also in maintaining that the title to the square of ground is not incumbered or affected by any of the mortgages that were given by the plaintiff. The land was bought with a part of the proceeds arising from a series of bonds for $4,000,000, secured by one of the mortgages mentioned. This square of ground is not described in the act of mortgage. The lands mortgaged are described specifically in the instrument, and, after the description, is the clause, "and all lands which may be acquired with the proceeds of any bonds issued hereunder." It was stipulated in the ordinance or resolution of the board authorizing the president to grant the mortgage that any property thereafter acquired with the proceeds of the bond issue should be covered by supplemental ordinances and acts of mortgage describing such property. No supplemental ordinance was adopted or mortgage granted covering this square of ground. On the contrary, the fund that was derived from the bond issue was reimbursed the amount of the price paid for this land, with interest at the rate which the bonds bore—all of which was with the consent and approval of the trustee named in the act of mortgage and made defendant in this suit. The trustee had the right to demand of the board a supplemental mortgage covering this square of ground, but the original act of mortgage did not create a lien or an incumbrance upon the land because it was not described in the act of mortgage. Article 3306 of the Civil Code provides:

"To render a conventional mortgage valid, it is necessary that the act establishing it shall state precisely the nature and situation of each of the immovables on which the mortgage is granted."

The judgment appealed from is affirmed.

THOMPSON, J., dissents.

BRUNOT, J., dissents and hands down dissenting opinion.

BRUNOT J. (dissenting). The board of commissioners of the port of New Orleans, a political corporation, created by and existing under the Constitution and laws of the state of Louisiana, purchased from New Orleans Water Supply Company a square of ground in the First district of the city of New Orleans, bounded by South Peters, Water, Orange, and Richard streets for the purpose of constructing warehouses and other structures thereon in aid of commerce in connection with its administration of the port of New Orleans. The square of ground thus acquired has always been private property, not subject to the easement or servitude as established by law on the banks of the Mississippi river. After acquiring the property the board of commissioners found that it was impractical to use it for the purpose for which it was bought, because of its remoteness from the public wharves, and for the reason that it is separated from them by roadways, railroad tracks, and other obstacles. Thereupon the board of commissioners adopted the following resolution:

"Whereas, this board is the owner in fee simple of the square bounded by S. Peters, Water, Richard, and Orange streets, city of New Orleans, which property was acquired by it on July 17, 1917, for the price and sum of $85,-000; and whereas, it now develops that said property is not necessary for the purposes of this board, and that therefore it is in its interest to sell and dispose of said property: Resolved that the vice president of this board be and he is hereby authorized and empowered to offer said property to New Orleans Public Service, Inc., for the price and sum of $125,000 cash, and to enter into a contract with said New Or-

leans Public Service, Inc., for the sale of said property at said price; and resolved further that the officers of this board be and they are hereby authorized and empowered to sign all acts and execute all instruments and take all steps which may be necessary to carry into effect any agreement which may be made in pursuance of the authority hereof, and to convey free and unincumbered title to said purchaser."

In pursuance of the foregoing resolution the board of commissioners of the port of New Orleans, commonly styled the dock board, and New Orleans Public Service, Inc., entered into the following agreement:

"(1) The dock board agrees to sell and the Public Service agrees to buy the square of ground situated in the city of New Orleans, bounded by South Peters, Water, Richard, and Orange streets, and the dock board agrees to convey good, free, and unincumbered title to said property.

"(2) The consideration for said sale shall be the sum of $125,000 cash, to be paid by the Public Service to the dock board at the execution of the notarial act of sale.

"(3) This agreement is made subject to examination of title, both as to the sufficiency of title in the dock board and as to the right of the dock board to sell and dispose of said property in accordance with this agreement, and, in the event that counsel for Public Service should make any objection to the title tendered by the dock board, then the dock board will bring suit for specific performance so that the sufficiency of the title and the right of the dock board to sell may be judicially determined."

The board of commissioners tendered title to New Orleans Public Service, Inc., but the title was declined for two reasons: First, that the board of commissioners of the port of New Orleans is not authorized under the Constitution and laws of this state to sell and dispose of the property; and, second, that the title tendered is not free and unincumbered. This suit followed, and it is an action for specific performance of the agreement quoted, supra, in which plaintiffs have cited the Hibernia Bank & Trust Company, trustee under a number of mortgages enumerated in the petition, and the recorder of mortgages. The prayer of the petition is for a judgment ordering New Orleans Public Service, Inc., to specifically perform its obligations under the contract of sale, decreeing the property covered by the contract not subject to the lien of any of the mortgages executed by the board of commissioners of the port of New Orleans now extant, and ordering the recorder of mortgages to cancel and erase from the records of his office the inscription of the mortgages appearing on his mortgage certificate set out in the petition, in so far as same affects the property involved in this suit. From a judgment in favor of plaintiff as prayed for, the New Orleans Public Service, Inc., appealed.

Prior to 1896 the state was charged with the administration of the public wharves of the port of New Orleans, and the agency through which it acted was the City of New Orleans. Act 70 of 1896 created the board of commissioners of the port of New Orleans, and appointed this board the agent of the state for the purposes of such administration. Section 2 of the act, in which the powers of the board are enumerated, was amended by Act 36 of 1900, and further amended by Act 14 of 1915, so that the section now reads as follows:

"That said board of commissioners shall have the power to regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in their judgment, be best for its maintenance and development. They shall have and enjoy all the rights, powers and immunities incident to corporations. They shall be empowered, and it shall be their duty to have charge of, and administer the public wharves and landings of the port of New Orleans; to construct new wharves and other structures when necessary; to erect sheds and other structures on the wharves and landings; to place and keep the wharves and landings, sheds and other structures in good condition; to maintain proper depths of water at all such wharves and landings; to provide mechanical facilities for the use of such wharves, landings, sheds and other structures; to provide light, water, police protection as under existing laws and such other services for such wharves, landings and sheds as they may deem advisable;

to finance, erect and operate all basins, locks, canals and warehouse elevators; that they shall be empowered to charge for the use of the wharves, sheds, and other structures, for the use of all facilities administered by them, and for any and all services rendered by them, such fees, rates, tariffs or other charges as may be established by the board of commissioners of the port of New Orleans: Provided that the provisions of this act shall apply only to the publicly owned wharves, docks and sheds as are now owned and operated or which may be purchased, acquired, erected or operated by the board of commissioners of the port of New Orleans, and is not intended to affect any constitutional or legal rights or the status now existing as to publicly or privately owned wharves or sheds on the river front of the port of New Orleans."

The section which we have just quoted enumerates all of the powers of the board of commissioners, except such as are granted for particular purposes by special acts of the Legislature or by constitutional amendments.

It is seen that the statute authorizes and empowers the board to purchase and acquire private property, but there is no express or fairly implied grant to the board of power to sell property so acquired. If the board may, for the proper and necessary administration of the port, sell property it has purchased, and which is no longer useful for the purposes of the port, the power to do so must be held to be incidental to the power of the board to purchase, acquire, and mortgage property; otherwise this power does not exist, for this court has held that it is not contained in the grant, which reads:

"They shall have and enjoy all the rights, powers and immunities incident to corporations."

In Duffy v. City of New Orleans, 49 La. Ann. 114, 21 So. 179, the court said:

"The board of commissioners authorized by the Act of 1896 is not a body corporate, within the meaning of the Constitution. It is obvious that the Legislature did not intend to create a corporation. Generally, a corporation has succession in its corporate name. It may plead and be impleaded. It may hold and convey property. The board here is not invested with all these qualities, essential to the existence of a corporation. The act empowers this board to administer the public wharves of the port, and invests it with certain duties. The matter is, we think, one chiefly of administration. * * * There is nothing granted to the board of commissioners, save the right to administer in accordance with the terms of the act, property of which the state has the power to resume control."

When the decision in the Duffy Case was rendered the powers of the board were very limited. It was then functioning under the provisions of Act 70 of 1896. Since that time the act has been twice amended, and Act 14 of 1915 empowers the board to purchase and acquire property and to finance certain designated port facilities. It is readily seen that the present powers of the board are broader and more comprehensive than the board possessed when the Duffy Case was decided. But in State v. Board of Commissioners, 153 La. 664, 96 So. 510, decided since the promulgation of Act 14 of 1915, the court said:

"The investment in the board of 'all rights, powers and immunities incident to corporations' means, not that the board has all or any of the powers that any corporation may have, but that the board has all of the incidental or implied powers that a political corporation needs to perform the duties that are expressly imposed upon it, or to fulfill the objects and purposes for which it was created. In allowing the board to do whatever is necessary for the exercise of the authority and duties expressly conferred upon it, the law does not put a very strict meaning upon what is necessary, but leaves the matter in some measure to the discretion of the board."

By a series of acts and constitutional amendments, passed for the promotion of particular purposes, the powers of the board have been further enlarged, it being now vested with all the authority formerly residing in the city of New Orleans, harbor masters, masters, wardens, wharf superintendents and other state officials concerning the territory, property, and control of the port, including the power to mortgage and

incumber property of the board, and also the power of expropriation.

Mortgage is a species of pledge. The creditor may seize and sell the property affected by it in default of payment. C. C. arts. 3278, 3279.

Writers on the civil law declare that mortgage is a species of alienation. Under the common law this is true, for there the land is actually conveyed to the mortgagee as security for the debt, subject to the condition that the conveyance becomes void upon the payment thereof. In Duclaud v. Rousseau, 2 La. Ann. 173, the court said:

"A mortgage is the alienation of a right in the property, not the alienation of the property itself. Perfect ownership becomes imperfect when the property is mortgaged, by the alienation of that real right; but the title and the possession still remain in the owner."

In Citizens' Bank v. Armor, 11 La. Ann. 468, the court said that a "mortgage is a quasi alienation." In that case the question was whether a thing claimed by the suit could be mortgaged by the defendant, to the prejudice of the plaintiff, pending the suit. The court held that it could not, because the mortgage was a quasi alienation.

The board of commissioners of the port of New Orleans is a mere governmental agency, clothed with certain powers and charged with certain duties. Under the several statutes and constitutional provisions of the state the powers of the board have been enlarged from time to time to meet the exigencies of the expansion and growth of the commerce of the port. It owns nothing and holds nothing in a proprietary capacity, but only as a governmental agency. Its powers with reference to the port are plenary in all that concerns the territory over which its jurisdiction extends and over the acquisition, construction and maintenance of wharves, sheds, warehouses, locks, dams, canals and other port facilities, in the expropriation of property necessary therefor, and in the mortgaging or incumbering of the same, but we fail to find in any of the grants of power to the board the power to sell or alienate real property which it has acquired for the purposes of the port, the title to which is in the state, and of which it cannot be divested except by express grant of power so to do.

I recognize that the board has acquired a piece of property which is useless for any purpose of the port, and that it has an opportunity to dispose of the property at a profit of $40,000; that if it is compelled to hold this property it will be deprived of the use of $125,000, which might otherwise be available for the acquisition of other and needed port facilities. It is clear that the purposes of the board are commendable and consistent with a proper and economic administration of the port, but the board is only an agency of the state, and until the principal authorizes it to alienate its property the board is powerless to convey to another the title to it.

I have studied this case carefully, hopeful that I could subscribe to the opinion or concur in the decree which is handed down by a majority of the court, without setting a doubtful and dangerous precedent from which we must, sooner or later, inevitably recede.

The Legislature alone may empower the plaintiff to alienate property it has purchased for the purposes of the port.

For these reasons, I respectfully dissent.