41 So.2d 721

**CITY OF NEW ORLEANS v. DUPUY STORAGE & FORWARDING CORPORATION.**

No. 39437.

June 30, 1949.

Robert L. Hickerson, New Orleans, for defendant and appellant.

Michel Provosty, New Orleans, for plaintiff and appellee.

MOISE, Justice.

This is an action to compel the defendant, Dupuy Storage and Forwarding Corporation, to carry out an agreement to pur-

chase from the plaintiff, at a stipulated price of $11,215.20 cash, certain lots of ground described in the petition. It is admitted that the land is vacant, that it is not taxable, nor dedicated for a public use; and it is alleged that the property is not needed by the Public Belt Railroad System for use in the operation thereof, either presently or in the future. The defendant admits that it is obligated to buy the property at the price stated but questions the authority of the plaintiff to sell the property and convey a good and merchantable title. There was judgment in the district court compelling the defendant to specifically perform, and from this judgment the defendant appeals.

The Public Belt Railroad System is of municipal origin, Ordinance No. 2683 NCS, with constitutional recognition, Art. 14, Sec. 26, Const. 1921. With its creation, an additional facility to promote commerce and establish a mode of handling freight and railroad cars throughout the territorial jurisdiction of the port, as well as the transportation of railroad freight cars to all points within and without the City, was provided. Its objective is to prevent discrimination, to afford to all users of its service the same equality of right as to timely movement of cars and freight, as well as a uniformity of service charges. The land in question was bought by the plaintiff some twenty years ago in contemplation of using it for public purposes.

The Commission, finding that the property is not suitable for the purpose for which it was bought and is, therefore, an idle investment, is desirous of disposing of it. The opportunity is now presented to use the property for a purpose germane to the development of the Public Belt System. In the proposed act of sale to the defendant there is contained the covenant that the vendee shall construct an industrial plant within one year from the date of the sale, to be serviced by the Public Belt, the tracks to be built for such service at the expense of the vendee. The writing in of this covenant of necessity forms a component part of the development of the system by bringing about an increase of revenues and by taking idle property out of commerce. An increase in revenues is "a consummation devotedly to be wished for" because this utility is supported in the main by its own revenues.

The defendant contends that the provisions of the Constitution and the laws providing for the creation and operation of the Public Belt Railroad Commission do not authorize the sale of real estate belonging to it, except in certain stipulated cases; that the proposed sale by plaintiff to defendant would be an ultra vires act of the plaintiff's representatives, and therefore, defendant would not acquire a good and merchantable title; and that, if plaintiff is authorized to sell the land, there is no provision for the method of sale.

The pertinent part of Article XIV, Sec. 26 of the Constitution of 1921 provides:

"It shall be the duty of the City of New Orleans to continue the operation of a Public Belt Railroad by and through a commission to be known as the Public Belt Railroad Commission for the City of New Orleans. * * * The *control, operation, management* and *development* of the Public Belt Railroad system shall be exclusively vested in said commission, which shall always be separate and distinct from that of any railroad. * * * Said Public Belt Railroad system shall be and remain the *sole property of the people of the City of New Orleans at all times, and shall in no way or manner ever be hypothecated or alienated.*"

Defendant argues that the provisions of this article prohibit the Commission from disposing of the property. The above language, however, is clear and free from ambiguity and shows conclusively that the hypothecation or alienation therein referred to affects and applies specifically to the Public Belt Railroad System. Certainly, there is no provision in the law prohibiting the Commission from disposing of an idle investment. This land, as shown by the admitted statement of facts, forms no part of the Public Belt System, has never been dedicated as a part thereof, and the constitutional framers never intended that the right to *develop* should be construed to hamper a business administration from converting a public liability into an asset, thereby insuring a greater development in the operation of the system itself.

This suit is controlled by the doctrine announced in the cases of Board of Port Commissioners v. New Orleans Public Service, Inc., 161 La. 741, 745, 109 So. 408 and Henderson v. City of Shreveport et al., 160 La. 360, 107 So. 139. The facts in the Board of Port Commissioners' case fit the facts in the instant case with the exception that here the reasons for a sale are stronger because of the covenant written in the act of sale, which is germane to the future development of the Public Belt System. On page 745 of the Port Commissioners' opinion, 109 So. at page 409, the Court held:

"* * * The reason why the board has *no statutory authority to sell real estate is* that all of the real estate owned by the board must be dedicated to *public use*, and the board has no authority or right to buy land except what is necessary to be administered by the board for public use. To say that the board has no right or authority to sell real estate is merely to state the corollary of the proposition that the board has no right or authority to buy real estate except what is necessary to be held and administered by the Board for public use. *But, if the board makes the mistake of buying property that is afterwards found to be not necessary or suitable for any public use, the board is obliged and therefore has the right to dispose of it.*" (Italics mine.)

The Port Commissioner's decision was based on the doctrine announced in the case of Henderson v. City of Shreveport et al., 160 La. 360, 107 So. 139. The reasoning in that decision is well stated in the Port Commissioner's case from which we quote at page 743, 109 So. at page 409:

" * * * the plaintiffs, as resident taxpayers of the City of Shreveport, sought to enjoin the school board from selling and the city from buying a vacant lot which the school board had bought with funds that were dedicated to the purchase of sites for school buildings, but which was afterwards found to be not suitable and not needed for such purpose. There was no statutory authority for a school board to sell real estate, except to 'change the location of a schoolhouse, sell or dispose of the old site, and use the proceeds thereof toward procuring a new one.' The lot which the school board was about to sell to the city had never been used as a schoolhouse site, and the proceeds of the sale were not intended to be invested then or immediately in a new site. Nevertheless, it was held that, as the school board had no right to hold the vacant lot, and could be compelled by mandamus to dispose of it, after it was known to be of no use for school purposes, the board had the necessary authority to sell it. The court said:

" 'Manifestly the school board has no right to acquire lands for any other than school purposes, and, since it has no right to acquire lands for any other than school purposes, it follows that it cannot hold lands indefinitely for other than school purposes; and hence *it is the plain duty of the school board to divest itself of any land which admittedly, according to the judgment of the board itself, is unnecessary or unsuitable for school purposes; and mandamus would certainly lie to compel the board to divest itself of land so held.'* (Italics mine.)

"The doctrine is stated more broadly in one of the headnotes of the decision thus:

" 'Public boards and officers must be authorized to do voluntarily that which they could by mandamus be compelled to do, though not being specially authorized so to do.' "

▮ The defendant bases its contention of lack of authority on the part of the Commission to sell the propery involved on the provision in Section 28 of Article XIV of the Constitution, as amended by Act No. 154 of the Legislature for the year 1928, Const. Amendment, No. 6, 1928, to-wit:

"(b) * * *

"Said bridge, its approaches and appurtenances, and the lands and other things required in the construction, operation or maintenance thereof, shall be exempt from every form of taxation, and shall in no manner be hypothecated, leased or alienated by the City of New Orleans except as herein set forth; provided, that lands acquired, which by a three-fourths vote of all the members of said Commission are declared

not necessary for the construction of said bridge and appurtenances, or for use in the operation thereof, may be leased or sold. The proceeds of any such lease or sale shall be applied to the payment of the obligations issued hereunder or to other purposes of the New Orleans Public Belt Railroad. * * *"

The possible reason for the specific grant of authority to the public Belt to sell idle lands acquired in the building of the bridge across the Mississippi River will be found in the first paragraph of the constitutional amendment of 1928, above referred to, which, in part reads:

"The City of New Orleans, acting through the Public Belt Railroad Commission, shall have the power to acquire, construct, maintain and operate across the Mississippi River, at or near New Orleans, a bridge for railroad, railway and *highway uses,* together with all approaches, railroad, railway and *highway connections and appurtenances,* and such power, *insofar as a bridge for railroad and railway uses is concerned, shall be exclusive; * * *."* (Italics mine.)

It is, therefore, obvious that this bridge is to be used by two governing authorities—the Public Belt System, municipally owned, and by the Highway Department of the State, as a necessary link in the chain of

public highways of the State. As an abundance of precaution, the constitutional framers evidently gave to one—the Public Belt System, the specific authority to sell the lands and to convert the proceeds thereof in payment of the bonds issued against the structure as a whole.

■ The defendant's last contention that, even though the Public Belt may have the right to sell the vacant, undedicated, idle lands, there is no procedure provided by statute or the Constitution for the sale, is likewise unsound. From the very section of the constitutional amendment quoted by defendant, the exclusive power of control and administration has been vested in the Public Belt Commission and the exercise of the right to sell will be effectual under an appropriate resolution duly adopted by the Commission, as has been done in the instant case.

It is, therefore, our opinion that the judgment of the district court, after analyzing all of the facts and circumstances of this case, is correct in maintaining plaintiff's right to sell the land in question and that judgment will be affirmed.

The judgment appealed from is affirmed, the defendant to pay all costs of court.

O'NIELL, C. J., takes no part.