Dear Mr. Durant:
This office is in receipt of the request of the Department of Transportation and Development, presented in a letter dated February 19, 2004 from Mr. Kam K. Movassaghi, for an Attorney General's opinion based on the following factual information concerning the utilization/acquisition of right of way for the widening of the U.S. 90 Huey P. Long Bridge in Jefferson Parish:
Roadway widening of the Huey P. Long Bridge is a project included in the Transportation Infrastructure for Economic Development ("TIMED") Program under La.R.S. 47:820.2. The bridge handles both railroad and highway traffic. Currently the Department of Transportation and Development ("DOTD") and the New Orleans Public Railroad Commission ("PBRC") share maintenance responsibilities for the bridge. The project provides for widening the bridge to six vehicular lanes while maintaining the existing two railroad tracks. Plans provide for utilization of the existing bridge right-of-way, approach structures, and ground-level roadways. The project will also require acquisition of additional right-of-way beyond the limits of the existing bridge right-of-way, use of existing bridge right-of-way for the widening of the highway portions of the bridge, structural additions, and modifications to the existing bridge.
In connection with the above facts, you have presented this question: Must DOTD pay compensation to the City of New Orleansor the PBRC, a public entity, for any existing bridge right-of-wayused for the widening of the highway portions of the Huey P. LongBridge?
The Attorney General's response to this question is as follows:
The provisions of La. Const. (1921), Art. 14, §§ 26-28, granted to the City of New Orleans, acting through the PBRC, the authority to acquire, construct, maintain and operate across the Mississippi River, at or near New Orleans, a bridge for railroad, railway and highway uses, together with all approaches and appurtenances. The City of
New Orleans was also granted the authority to acquire the necessary lands for the construction, maintenance and operation of the bridge and its approaches. Ownership of the bridge and approaches was to be vested in the City of New Orleans. Acting on this authority, the City of New Orleans, through the PBRC, acquired the necessary real property as the right-of-way for the construction, operation and maintenance of the railroad and highway bridge and its approaches. This bridge was later to be named and known as the Huey P. Long Bridge.
The provisions of La. Const. (1921), Art. 6, § 22 authorized the State Advisory Board to disburse $7,000,000.00 in such manner as it deemed proper to secure the construction of a bridge over the Mississippi River at or near New Orleans, in conjunction with the New Orleans Public Belt Railroad Commission or anyone else, subject to such terms, conditions and stipulations as the State Advisory Board saw fit to make. The only specific requirement was that the bridge would be built according to standards and specifications of the Louisiana Highway Commission, and that the bridge would be toll-free to all motor cars, automobiles, other vehicles, and pedestrians.
In order to build, maintain, and operate the Mississippi River bridge authorized by the above constitutional amendments (the "Huey P. Long Bridge"), the State of Louisiana acting through the State Advisory Board ("State"), the City of New Orleans acting through the Public Belt Railroad Commission ("PBRC"), and Morgan's Louisiana and Texas Railroad and Steamship Company entered into a "Bridge Contract" dated November 5, 1932 ("the contract"). The respective rights and responsibilities of the PBRC and the State in building, maintaining, and using the bridge and its approaches are contained in Section 1 (pages 1 through 17) of the contract; the remainder of the contract, Section 2, contains only the agreements between the PBRC and Morgan's Louisiana and Texas Railroad and Steamship Company for use of the railway part of the bridge, and is not relevant to this opinion.
Relevant portions of the contract are as follows:
Pages 7 and 8:
 Section 1(a) "State" and "Public Belt" will construct, maintain and operate a combination highway and double track railroad bridge and approaches thereto and connections therewith across the Mississippi River, above the City of New Orleans;
 The bridge and approaches as referred to in this contract shall be understood to consist of the main bridge structure, steel approaches and earth approaches thereto from point of beginning of the ascending 1.25% grade on the east side to the clearance points of connections with "Company's" main line at West Bridge Junction, including trackage thereon and all other appurtenances, and the highway connections shown on said plan;
Pages 9 and 10:
 (b) The said bridge shall be a joint railroad and highway bridge and the highway approaches thereof shall run to and connect with the Jefferson Highway on the east bank of the Mississippi River and with U.S.-Louisiana Highway Route No. 90 on the west bank of the Mississippi River, all as shown in said "Exhibit A."
 (c) "State" agrees to contribute toward the construction of the bridge and approaches the sum of Seven Million ($7,000,000.00) Dollars, which said sum of Seven Million ($7,000,000.00) Dollars shall be payable at the time and in manner specified in Paragraph (d) hereof.
Pages 11 and 12:
 (e) As used in this contract, the term "highway section" shall mean the earth and viaduct approaches to said bridge intended for motor cars, automobiles, and other vehicles, and pedestrians, which said approaches run respectively as shown in said "Exhibit A" from the Jefferson Highway on the east bank of the Mississippi River to the west end of said bridge; together with the roadways and sidewalks on the bridge designed and intended for use by motor cars, automobiles and other vehicles, and pedestrians; together with all metal work of the roadway and sidewalk floor systems necessary to support the roadways and sidewalks or to attach such floor systems to the supporting trusses of the main bridge or the columns of the viaduct approaches; and together with such appurtenances to said bridge and approaches as are used directly in connection with said roadways and sidewalks. Title to and ownership of the entire bridge and approaches are hereby recognized as vested in the City of New Orleans and "Public Belt" shall have exclusive control of the administration and management of the railroad section of said bridge and approaches and the operation of railroads thereover; but it is agreed that possession of the highway section of bridge and approaches shall be and remain in the State of Louisiana, and the State of Louisiana shall have full jurisdiction and control thereof as a part of the Highway System of the State of Louisiana, with full power and authority to make all regulations for the use of the said highway section, to police the same, and, except as may be now or hereafter otherwise provided by law, to determine the terms and conditions upon which said highway section of said bridge and approaches shall be used by motor cars, automobiles and other vehicles, and pedestrians. The aforesaid right of possession and authority of the State of Louisiana over the highway section of said bridge and approaches shall not be affected or impaired by anything done or omitted to be done by "Public Belt", its successors or assigns, or any other party or parties whatsoever it being the intent hereof that the said right of possession and authority with respect to the highway section of said bridge and approaches shall be vested in perpetuity in the State of Louisiana.
* * *
 (f) Anything in this contract contained to the contrary notwithstanding, it is understood: (1) that the State of Louisiana shall not do or permit to be done anything on the highway section of said bridge and approaches which might in any manner threaten the safety of said bridge and/or the approaches thereto or impair the use of the railroad section thereof; (2) that the highway section of said bridge and approaches shall not be used for any purposes other than the passage of motor cars, automobiles and other vehicles, and pedestrians; (4) that "Public Belt" shall not do or permit to be done anything on the railroad section of said bridge and approaches which might in any manner threaten the safety of said bridge and/or the approaches thereto or impair the use of the highway section thereof; (5) that the railroad section of said bridge and approaches shall not be used for any purpose other than as permitted by this contract;
* * *
 (g) All expenditures for maintenance and repair directly applicable to the railroad section of said bridge and approaches shall be borne by "Public Belt", and all expenditures for maintenance and repair directly applicable to the highway section of said bridge and approaches shall be borne by "State" as a part of its Highway System.
Acts 1976, No. 245, § 1 enacted a new Part V, City of New Orleans Public Belt Railroad of Chapter 9 of Title 33 of the Louisiana Revised Statutes of 1950, containing R.S. 33:4530 to 33:4533, and incorporated therein the provisions of
La. Const. 1921, Art. 14, §§ 26 to 28, relating to the duties of the city of New Orleans with respect to the public belt railroad, which had been continued as statutes by La. Const. (1974) Art. 14, § 16(A)(10).
The rights of the City of New Orleans, through the PBRC, to ownership and control of the Huey P. Long Bridge, its approaches and appurtenances, originally established by the Constitution of 1921, were continued in full force and effect by La.R.S.33:4532(A).
Section B(2) of R.S. 33:4532 states that:
 The Huey P. Long Bridge, its approaches and appurtenances and the lands and other things acquired in connection with the construction, operation and maintenance thereof, shall not be hypothecated, leased or alienated by the city of New Orleans, except that: (1) Lands acquired which, by a two-thirds vote of all members of said Commission, are declared not necessary for the construction of said bridge and appurtenances, or for use in the operation thereof, may be leased or sold. The proceeds of any such lease or sale may be used by the public belt railroad commission for general railroad purposes.
Under City of New Orleans v. Dupuy Storage Forwarding Corp., Sup. 1949, 215 La. 795, 41 So.2d 721, interpreting the constitutional predecessor of R.S. 33:4532(B)(2), the PRBC's right to sell is limited to vacant, undedicated, idle lands, unsuitable for the public purposes for which they were purchased by the City of New Orleans.
Section B(3) of R.S. 33:4532 requires the City of New Orleans, through the PBRC, to continue to comply with all existing contractual obligations, including
". . . all the contracts between the city of New Orleans, acting by and through the public belt railroad commission and the railroad companies using the Huey P. Long Bridge and the tracks of the public belt railroad system, and the rights of the Louisiana Department of Highways, in and to the perpetual use of the highway portions of said bridge "
There are only two situations in which the City of New Orleans could be entitled to compensation from the DOTD for the widening of the highway portion of the Huey P. Long Bridge and approaches:
First, the City would be entitled to compensation if DOTD were to expropriate real property from the City for the purpose of obtaining or expanding its highway right-of-way under La.R.S.48:218. See City of New Orleans v. State of Louisiana,443 So.2d 562 (La., 1983), which extended the protections of R.S.48:218 to public entities as well as private. That situation is inapplicable here, because DOTD is not expropriating, taking, or acquiring any property to obtain a right of way, but is simply exercising its right to use for highway improvement a portion of the existing, dedicated bridge right-of-way, for which it has already been granted perpetual use by both statute and contract.
Second, the City would be entitled to receive compensation if, under R.S. 33:4532(B)(2), it were to sell or lease to DOTD any vacant, undedicated, idle lands, unsuitable for the public purposes for which they were purchased, and which had been declared by the PBRC to be unnecessary for the construction of said bridge and appurtenances or for use in the operation thereof. That situation is inapplicable here, because the land which DOTD proposes to use is land which has already been dedicated as a right- of-way for the bridge and approaches, and obviously is both suitable for the purpose for which it was purchased and necessary for the continued operation thereof. Under those circumstances, the City is prohibited from selling or leasing that land or right-of- way to DOTD or to anyone else.
The City of New Orleans and its PBRC have no legal authority toseek any compensation from DOTD for DOTD's use of the bridgeright-of-way to improve and widen the highway.
Not only do the City of New Orleans and its PBRC lack any legal authority to seek compensation, they have no equitable claim to any compensation, for the following reasons:
The bridge and approaches were constructed and are to be maintained as a double-track railroad bridge and as a highway bridge. The railroad is limited to two tracks, both by the contract and by the fact that the tracks are constrained by highways on both sides; however, there is no corresponding limitation on the number of the highway lanes or the widths of the lanes, save any safety considerations and the availability of adequate right-of-way. As a practical matter, the railroad portion of the bridge and approaches simply cannot be expanded, and the railroad cannot use any more of the existing bridge right-of-way. On the other hand, the remaining portion of the bridge right-of-way can be used by DOTD for the necessary and authorized highway improvements and widening, without interfering with the PBRC's use of the railroad portion of the bridge. Thus, for all practical purposes, the City of New Orleans and its PBRC will lose nothing for which they could or should be compensated, and they have no equitable claim for such compensation.
Based on the above analysis, it is the opinion of the AttorneyGeneral that the Department of Transportation and Development mayuse the existing right-of-way for the authorized widening andimprovement of the highway portion of the bridge and approaches,without paying any compensation to the City of New Orleans or itsPublic Belt Railroad Commission.
If we may be of further assistance, please do not hesitate to contact the undersigned.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
By: _____________________
 TERRY F. HESSICK Assistant Attorney General
CCF, JR. /TFH: mjb